UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS,<br><br>        Plaintiff,<br><br>   v.<br><br>R. KENDALL, et al.,<br><br>        Defendants. | No. 2:17-cv-2709 AC P<br><br><br>ORDER |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

    I.    <u>Application to Proceed In Forma Pauperis</u>

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). ECF Nos. 2, 5. Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

1

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C.
§ 1915(b)(2).

II.  Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally
////

cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

III. Complaint

The first amended complaint alleges that defendants Kendall, Abrahms, Mcguire, Lord, Fuji, and Gonzales, as well as two Doe defendants, violated plaintiff's First, Eighth, and Fourteenth Amendment rights and his rights under the Rehabilitation Act and state tort law. ECF No. 7 at 2-18. Plaintiff prefaces his claims by alleging that he "is a member of a protected class under Coleman v. Brown under the Fourteenth Amendment of the constitution." Id. at 4, 5, 7.

Plaintiff alleges that on January 1, 2017, he was on the phone with his foster mother when he received news that his brother had passed away. Id. at 12, ¶ 13, 15. Almost immediately after receiving this news, while plaintiff was still visibly upset, defendant Kendall told him to get off the phone. Id., ¶ 16. When plaintiff asked for a minute, Kendall told him twice more, in rapid succession, to get off the phone. Id., ¶¶ 18-19. Then, without warning or telling plaintiff to turn around and cuff up, Kendall "slammed" plaintiff when he turned away. Id., ¶¶ 21-22. While Kendall had plaintiff face down, he put his knee in plaintiff's back while bending back his right arm. Id. at 13, ¶ 26. Plaintiff resisted by pulling his arms toward his stomach, which caused Kendall to jerk his arms back and say that plaintiff was trying to bite him. Id., ¶¶ 27-28. After refuting that he was trying to bite Kendall, plaintiff began complying with orders and asked Kendall why he "slammed" him. Id., ¶¶ 29-31. Two Doe officers then escorted plaintiff to the

sally port where he made a complaint of excessive use of force and an excessive force video was made. Id., ¶¶ 33, 37-38. While in the sally port, plaintiff 's restraints were so tight that they cut off circulation and made his fingers numb. Id., ¶ 40. When he told defendant Lord that his cuffs were too tight, Lord told him that he "shouldn't of got in them." Id., ¶ 42.

Plaintiff was eventually released back to the yard, but was called back to the sally port the next day and was held there for approximately seven hours in the freezing rain while once again handcuffed too tightly. Id. at 14, ¶¶ 45, 50-52. During that time, defendant Lord refused to loosen plaintiff's handcuffs or let him urinate, drink water, or take shelter from the rain. Id. at 5. He expressed that he was beginning to feel suicidal and was taken to a crisis bed. Id. at 14, ¶¶ 53-55. While in the crisis bed, he was denied medical treatment for his back spasms, and on January 6, 2017, after six hours of laying on the ground and hitting the door asking for assistance, he was put in a gurney and given a Haldol shot by a John Doe nurse. Id. at 14-15, ¶¶ 55-58.

Sometime later, plaintiff had a disciplinary hearing at which Kendall lied and said that plaintiff had assaulted him, resulting in plaintiff being sent to administrative segregation and then to a security housing unit. Id. at 15, ¶ 63. On June 6, 2017, about two months after plaintiff was returned to the yard, Kendall retaliated against plaintiff for making the excessive force complaint by taking plaintiff's food and throwing it in the garbage. Id., ¶¶ 63-65. About two weeks later, defendant Abrahms, who is friends with Kendall, denied plaintiff his Ramadan meal and day room access, and later denied him the ability to go to his treatment group. Id. at 15-16, ¶¶ 66-67.

Plaintiff further alleges that on June 24, 2017, Kendall escorted him to a disciplinary hearing on an unrelated fighting charge. Id. at 16, ¶¶ 68, 70. Defendant Mcguire acted as the hearing officer, and after finding plaintiff guilty issued an excessive punishment. Id., ¶¶ 70-72. She then got angry when there was not a second charge, and when she asked Kendall why she could not find the second charge he said that it probably happened on a different shift. Id., ¶¶ 73-78. At that point, Mcguire dismissed plaintiff. Id., ¶ 79. Plaintiff appears to allege that after the hearing, Kendall took all of his property. Id. at 5.

Finally, plaintiff alleges that on July 6, 2017, he returned to his cell and found his property missing. Id. at 16, ¶ 81. Defendants Fuji and Gonzales responded, and plaintiff told them that he

was being subject to retaliation by Kendall and his co-workers and tried to submit an appeal. Id. at 17, ¶¶ 82-87. Gonzales refused to sign the appeal and said that he was going to give plaintiff's property back, then asked if plaintiff was sure that he wanted to submit the appeal. Id., ¶¶ 88. Plaintiff took the question as a threat that he wouldn't get his property back and would suffer more retaliation if he filed an appeal. Id., ¶ 89.

IV. Excessive Force and Failure to Protect

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1970) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

Furthermore, "[i]n its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer, 511 U.S. at 832 (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

Plaintiff's allegations that Kendall used excessive force against him while he was on the phone with his foster mother are sufficient to state claims for relief and will require a response. Similarly, plaintiff's claims that defendant Lord refused to loosen his handcuffs while he was in

5

the sally port and denied him access to a bathroom, water, and shelter from the rain are also sufficient to state claims for relief and will require a response. However, though plaintiff asserts that "all defendants [are] sued in their individual capacity," and that there "is a pattern of assaults on inmates here at CSP-Sac" (ECF No. 7 at 4), he does not allege any uses of force or failures to intervene by any other defendants (id. at 11-18), and therefore does not state any viable claims for excessive force or failure to protect against them.

To the extent plaintiff may be attempting to asset an excessive force or failure to protect claim against the Doe defendants that escorted him to the sally port,[1] his only allegations against them are that they escorted him and asked him if he wanted to make a use of force video. Id. at 13, ¶¶ 33-34. These allegations are insufficient to state a claim for relief.

V. Retaliation

A viable First Amendment claim for retaliation must establish the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff "need not establish an independent constitutional interest" was violated); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns.").

Plaintiff alleges that the actions of the defendants subsequent to Kendall's use of force were in retaliation for his filing a use of force complaint against Kendall. ECF No. 7 at 5. Although most of the retaliation claims are little more than conclusory assertions that defendants acted in retaliation, plaintiff has sufficiently alleged retaliation claims against Kendall and Gonzales.

---

[1] Plaintiff lists one John Doe correctional officer as a defendant, and the officers that escorted him are the only Doe correctional officers he identifies.

Plaintiff successfully states a claim for retaliation against defendant Gonzales for threatening him when he tried to submit an appeal. Id. at 17, ¶¶ 87-89. Additionally, given the close relation between plaintiff's disciplinary charge for assaulting an officer and his complaint against Kendall, he has also sufficiently alleged facts from which the court can infer that Kendall retaliated against him when he lied at plaintiff's disciplinary hearing. Id. at 15, ¶ 63. However, plaintiff's claim that Kendall retaliated against him by throwing out his property fails. The two incidents with plaintiff's property took place on June 6 and 24, 2017 (id. at 5, 16), five months after plaintiff's complaint and two months after he was returned to the yard where Kendall worked. There is no indication from the facts that Kendall said or did anything that would demonstrate that he took plaintiff's property because of the use of force complaint. Furthermore, the facts seem to indicate that plaintiff's property was taken during the second incident as part of his punishment for being found guilty of fighting. Id. at 5.

The retaliation claims against the other defendants fail for similar reasons. With respect to the claim against Abrahms, though plaintiff claims that Abrahms and Kendall were friends, the allegations that Abrahms denied plaintiff his Ramadan meal on June 19, 2017, and did not allow him to go to his treatment group a few days later, do not support an inference that the motivation was retaliation for plaintiff's complaint against Kendall that had been made over five months prior. Id. at 15-16, ¶¶ 66-67. As to plaintiff's claims against defendant Lord, the allegations do not demonstrate that Lord was aware of plaintiff's complaint against Kendall when he refused to loosen plaintiff's handcuffs and left plaintiff in the sally port. Id. at 5, 13. Next, although plaintiff claims that Mcguire and Kendall spoke during his June disciplinary hearing for fighting, the conversation was unrelated to the complaint against Kendall, and there are no facts from which it can be inferred that Mcguire was motivated by retaliatory intent. Id. at 16, ¶¶ 70-79. Finally, plaintiff claims that defendant Fuji refused to act despite plaintiff telling Fuji that he was being retaliated against. Id. at 5, 17. However, Fuji's response questioning the truth of plaintiff's statements indicates that his lack of action was due to his disbelief of plaintiff's claims, rather than retaliation.

////

VI. Deliberate Indifference to Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Though plaintiff has named only one Jane Doe nurse as a defendant (ECF No. 7 at 3), he asserts that three John Does denied him medical treatment while he was in the crisis bed (id. at 8, 15). He also alleges that one of the nurses gave him a Haldol shot, which he believes is used on inmates causing a disturbance and is not approved as a pain medication. Id. Plaintiff's allegations that the Doe defendants refused to respond to his cries for help while he was lying on the ground in pain, and instead laughed at and ignored him and gave him Haldol instead of pain medication (id. at 15, ¶¶ 57-58), are sufficient to state claims for relief.

Although the use of fictitiously named Doe defendants is generally not favored, Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), amendment is allowed to substitute true names for fictitiously named defendants, Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989). Because it appears that plaintiff may be able to identify the Doe defendants through

discovery and he has stated a cognizable claim against them, the court will allow the claims to proceed. However, due to the impossibility of serving an unknown individual, the court will not order service on the Doe defendants until plaintiff has identified them and filed a motion to substitute a named defendant for the Doe defendants. Plaintiff should seek to discover the identity of Doe defendants and move to substitute them into the case as soon as is possible. Failure to identify a Doe defendant and serve him prior to the close of discovery will result in a recommendation that the claims against that defendant be dismissed.

VII. Rehabilitation Act

"A plaintiff bringing suit under § 504 [of the Rehabilitation Act] must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation omitted). Although plaintiff states that his rights under the Rehabilitation Act were violated (ECF No. 7 at 4, 7) and that he suffers from number of mental health conditions (id. at 11, ¶¶ 4-5), he fails to explain what benefits he was denied or show that the denial was because of his disability. He therefore fails to state a claim for relief under the Rehabilitation Act.

VIII. Equal Protection

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all similarly situated people equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Plaintiff cannot maintain an equal protection claim on the basis of his membership in the class of prisoners covered by Coleman v. Brown, 938 F. Supp. 2d 955 (E.D. Cal. 2013). A "class" for the purposes of class action litigation is not the same thing as a "protected class" within the meaning of the Equal Protection Clause. The Coleman case deals with the violation of prisoners' Eighth Amendment rights, and neither prisoners nor mentally ill persons qualify as a

protected class for equal protection purposes. See Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989); City of Cleburne, 473 U.S. at 445-46. Furthermore, even if plaintiff is correct and he belongs to a protected class, he has not explained how he was discriminated against because of his membership in that class and he therefore fails to state a claim.

IX. State Law Claims

Under California law, the timely presentation of a claim under the Government Claims Act is a condition precedent to maintaining a tort action against the state and therefore is an element of the cause of action that must be pled in the complaint. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004).

A plaintiff seeking to bring a lawsuit for money or damages against the state[2] for injury must first submit a claim to the California Victim Compensation and Government Claims Board ("Claims Board") within six months after accrual of the cause of action. Cal. Gov't Code §§ 905.2; 911.2. A claim against a public employee[3] or former public employee is not required to be presented prior to filing an action against the employee if the alleged injury resulted from an act or omission in the scope of the defendant's employment as a public employee. Cal. Gov't Code § 950. However, a cause of action against the employee cannot be maintained if an action for the injury would be barred against the employing public entity for failure to comply with the notice of claim requirements. Cal. Gov't Code § 950.2. In other words, a plaintiff must submit a timely notice of claim to the Claims Board before he can bring suit against a state employee.

Plaintiff alleges that defendant Kendall slandered, defamed, and libeled him, but he has not alleged compliance with the Government Claims Act. ECF No. 7 at 7. Accordingly, plaintiff has failed to sufficiently allege any state law tort claims.

////

////

---

[2] "State" is defined as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

[3] A "public employee" is an employee of a "public entity," which includes the State. Cal. Gov't Code §§ 811.2, 811.4.

X.     Leave to Amend

For the reasons set forth above, the court finds that the first amended complaint does not state any cognizable claims against defendants Abrahms, Mcguire, and Fuji, or the Doe correctional officers. Plaintiff has also failed to state an Equal Protection claim or claims under the Rehabilitation Act or state tort law or for retaliation against Kendall for throwing out his property. However, it appears that plaintiff may be able to allege facts to remedy this and he will be given the opportunity to amend the complaint if he desires.

Plaintiff may proceed forthwith to serve defendants Kendall, Lord, and Gonzales on his claims that Kendall used excessive force on him and retaliated against him by lying at his disciplinary hearing; that Lord failed to loosen his handcuffs and left him in the sally port for hours without water, shelter, or access to a bathroom; and that Gonzales retaliated against him for filing appeals by threatening that he would suffer additional retaliation. The Doe nurses may be served once they have been identified. Alternatively, plaintiff may delay serving any defendant and amend the complaint to attempt to fix the problems identified above.

Plaintiff will be required to complete and return the attached notice advising the court how he wishes to proceed. If plaintiff chooses to amend the complaint, he will be given thirty days to file an amended complaint. If plaintiff elects to proceed on his claims against defendants Kendall, Lord, and Gonzales without amending the complaint, the court will proceed to serve the complaint. A decision to go forward without amending the complaint will be considered a voluntarily dismissal without prejudice of the claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers, as well as plaintiff's Equal Protection claim, claims under the Rehabilitation Act and state tort law, and claim for retaliation against Kendall for throwing out his property.

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal). Once plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

XI. Plain Language Summary of this Order for a Pro Se Litigant

Your request to proceed in forma pauperis is granted and you are not required to pay the entire filing fee immediately.

Some of the allegations in the complaint state claims against the defendants and some do not. Defendant Kendall will be required to respond to your excessive force claim and the claim that he retaliated against you by lying at your disciplinary hearing. Defendant Lord will be required to respond to your claim that he failed to loosen your handcuffs and left you in the sally port without water, shelter, or access to a bathroom. Defendant Gonzales will be required to respond to your claim that he retaliated against you for filing grievances by threatening you with more retaliation.

Your claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers do not state claims for relief because you have not alleged enough facts to show that they violated your rights. Your Equal Protection claim does not state a claim because Coleman v. Brown did not created a protected class for equal protection purposes, and even if it did you have not

12

explained how you were discriminated against because you are a part of that class.  Your claims under the Rehabilitation Act are not sufficient because you have not explained what benefit you were denied or shown that such a denial was because of your disability.  The state tort law claims fail because you have not alleged that you filed a timely notice of claim with the Victims' Compensation Board.  Your retaliation claim against Kendall for throwing out your property is not sufficient because you have not alleged facts showing he had a retaliatory motive.

You have a choice to make.  You can either (1) proceed immediately on your claims against defendants Kendall, Lord, and Gonzales as outlined above, and voluntarily dismiss the other claims without prejudice; or (2) try to amend the complaint.  If you want to go forward without amending the complaint, you will be voluntarily dismissing without prejudice the claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers, as well as your Equal Protection claim, claims under the Rehabilitation Act and state tort law, and claim for retaliation against Kendall for throwing out your property.  If you choose to amend your complaint, the amended complaint must include all of the claims you want to make, including the ones that have already been found to state a claim, because the court will not look at the claims or information in the original complaint.  **Any claims or information not in the amended complaint will not be considered.**  You must complete the attached notification showing what you want to do and return it to the court.  Once the court receives the notice, it will issue an order telling you what you need to do next (i.e. file an amended complaint or wait for the complaint to be served).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF Nos. 2, 5) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

////

13

3. Plaintiff's motions to serve summons and the complaint (ECF Nos. 17, 18) are granted to the extent that the complaint has been screened and plaintiff has the option to serve defendants Kendall, Lord, and Gonzales as set forth above or to amend the complaint. The motions are otherwise denied.

4. Plaintiff's claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers, as well as his Equal Protection claim, claims under the Rehabilitation Act and state tort law, and claim for retaliation against Kendall for throwing out his property do not state claims for which relief can be granted.

5. Plaintiff has the option to proceed immediately on his claims that Kendall used excessive force on him and retaliated against him by lying at his disciplinary hearing; that Lord failed to loosen his handcuffs and left him in the sally port for hours without water, shelter, or access to a bathroom; and that Gonzales retaliated against him for filing appeals by threatening that he would suffer additional retaliation. Alternatively, plaintiff may amend the complaint.

6. Within fourteen days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file a second amended complaint. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of the claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers, as well as the Equal Protection claim, claims under the Rehabilitation Act and state tort law, and claim for retaliation against Kendall for throwing out his property.

DATED: April 24, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE WELLS,

    Plaintiff,

v.

R. KENDALL, et al.,

    Defendants.

No. 2:17-cv-2709 AC P

PLAINTIFF'S NOTICE ON HOW TO PROCEED

Check one:

\_\_\_\_\_ Without amending the complaint, plaintiff wants to proceed immediately on his claims that Kendall used excessive force on him and retaliated against him by lying at his disciplinary hearing; Lord failed to loosen his handcuffs and left him in the sally port for hours without water, shelter, or access to a bathroom; and Gonzales retaliated against him for filing appeals by threatening that he would suffer additional retaliation. Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing without prejudice his all of his claims against defendants Abrahms, Mcguire, Fuji, and the Doe correctional officers, as well as his Equal Protection claim, claims under the Rehabilitation Act and state tort law, and claim for retaliation against Kendall for throwing out his property

\_\_\_\_\_ Plaintiff wants to amend the complaint.

DATED:_____

                                                Andre Wells
                                                Plaintiff pro se