UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS, | No. 2:17-cv-2709 AC P |
| Plaintiff, | |
| v. | ORDER |
| R. KENDALL, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and state law. By order filed April 24, 2019, the undersigned screened the first amended complaint and gave plaintiff the option of either proceeding on the complaint as screened or filing an amended complaint. ECF No. 21. Plaintiff chose to amend the complaint and has now filed a second amended complaint. ECF No. 30. He has also moved for change of venue. ECF No. 29.

I.     Motion for Change of Venue

Plaintiff has filed a motion for change of venue, seeking transfer to the United States Court for the Northern District of California on the ground that the undersigned is biased against him. ECF No. 29. To the extent plaintiff indicates that this motion is an appeal of the April 24, 2019 screening order which dismissed portions of the complaint with leave to amend, that order is not a final, appealable order and this court is therefore not divested of jurisdiction. Indian Oasis-Baboquivari Unified Sch. Dist. No. 40 v. Kirk, 109 F.3d 634, 636 (9th Cir. 1997) ("[A]n order

dismissing a complaint with leave to amend is not a final, appealable order."); Nascimento v. Dummer, 508 F.3d 905, 908 (9th Cir. 2007) ("When a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply." (citation omitted)).

The venue statute provides that a civil action is properly brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In this case, it appears that all defendants are located, and the incidents giving rise to the claims occurred, in the Eastern District of California. ECF No. 30. Accordingly, it appears that venue is proper in the Eastern District and plaintiff has not raised any grounds on which venue would be proper in the Northern District. Furthermore, even if plaintiff could establish judicial bias, the bias of a single judge within the district would not merit transfer.

To the extent plaintiff's motion can be construed as a motion to disqualify the undersigned, said motion is properly before the undersigned, as the Ninth Circuit has "held repeatedly that the challenged judge h[er]self should rule on the legal sufficiency of a recusal motion in the first instance." United States v. Studley, 783 F.2d 934, 940 (9th Cir. 1986) (citing United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978)). If the affidavit is legally insufficient, then recusal can be denied. United States v. $292,888.04 in U.S. Currency, 54 F.3d 564, 566 (9th Cir. 1995).

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein." 28 U.S.C. § 144. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under both recusal statutes, the substantive standard is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Studley, 783 F.2d at 939 (quoting Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984) (internal quotations omitted)).

In this case, plaintiff bases his claims of bias on the delay in screening his complaint, the screening of the complaint, and the fact that the court has not granted his request for an order directing the California Department of Corrections and Rehabilitation (CDCR) to preserve a recorded phone call. ECF No. 29. Contrary to plaintiff's assertions, the delay in screening his complaint was not due to any bias against him. While the court understands plaintiff's frustration at how long it can take to resolve matters, these delays are not attributable to any malicious intent toward him, but rather to the fact that the Eastern District of California maintains one of the heaviest caseloads in the nation, a significant portion of which is comprised of pro se inmate cases. This sometimes causes unavoidable delays in the resolution of individual matters. To the extent plaintiff's claims of bias and obstruction arise out of the undersigned's rulings in this case, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Recusal "is required 'only if the bias or prejudice stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding.'" Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 885 (9th Cir. 1991) (quoting Toth v. TransWorld Airlines, 862 F.2d 1381, 1388 (9th Cir. 1988)).

Accordingly, plaintiff's motion for transfer of venue or recusal is denied. To the extent the motion also seeks an order directing the CDCR to preserve the recording of his phone conversation, the request will also be denied. The incident that gives rise to plaintiff's claims took place on January 1, 2017, and plaintiff alleges that the retention period for the recording at

issue is three years. ECF No. 29. This means that approximately six months remain before the recording is subject to being destroyed. Furthermore, "[i]t is well established that the 'duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.'" Surowiec v. Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (citation omitted). Plaintiff has provided no facts demonstrating that the recording will be destroyed prior to the expiration of the retention period, that he is incapable of notifying the CDCR of the pending litigation and therefore putting it on notice of its duty to preserve the evidence, or that the CDCR will disregard its duty to preserve evidence once it becomes aware of that duty. Accordingly, the request for a court order will be denied.

II. Second Amended Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

The second amended complaint alleges that defendants Kendall, Lord, Robenson, Baughman, Nicolson, Ross, Voong, Abrahms, Mcguire, and Fuji, as well as five Doe defendants,[1] violated plaintiff's First, Eighth, and Fourteenth Amendment rights; the Civil Rights of Institutionalized Persons Act; the Unruh Civil Rights Act; and state tort law. ECF No. 30 at 1-16.

Plaintiff alleges that on January 1, 2017, he was on the phone with his foster mother when he received news that his brother had passed away. Id. at 4, ¶ 15-16, 18. Almost immediately after receiving this news, while plaintiff was still visibly upset and crying, defendant Kendall told him to get off the phone. Id., ¶ 19. When plaintiff said that he had just found out his brother had died, Kendall told him he did not care and to get off the phone. Id., ¶¶ 20-21. Kendall then told plaintiff twice more, in rapid succession, to get off the phone. Id. at 5, ¶ 24. Plaintiff responded

---

[1] In the defendant section of the complaint, plaintiff lists two John Does and one Jane Doe. ECF No. 30 at 2-3, ¶¶ 4-5, 9. However, the factual allegations refer to two additional John Doe defendants. Id. at 12-13, 15, ¶¶ 93, 98, 108-109.

4

by telling him to hold on and turned away. Id., ¶ 25. Then, without warning, Kendall "slammed" plaintiff into the concrete floor. Id., ¶ 27. While Kendall had plaintiff face down, he put his knee in plaintiff's back while bending back his right arm. Id., ¶ 28. Plaintiff started asking Kendall why he "slammed" him, and as other officers started responding Kendall tried to make it look like plaintiff was attempting to bite him. Id., ¶¶ 29-32. Plaintiff was then escorted to the sally port where he made a complaint of excessive use of force and an excessive force video was made. Id. at 6, ¶¶ 36-37. While in the sally port, plaintiff's restraints were so tight that they cut off circulation to his hands, which he complained about to defendant Nicolson. Id., ¶¶ 38-39. Nicolson and Ross, who was the acting supervisor, refused to report illegal activity despite being mandated to do so. Id. at 6, 16, ¶¶ 39-40, 112. When he told defendant Lord that his cuffs were too tight, Lord told him that he "shouldn't have got in them." Id. at 6, ¶¶ 41-42.

Plaintiff was eventually released back to the yard, but Doe defendants 1 and 2, who were "responsible for the lock up orders needed to place a[n] inmate in segragation [sic]," took some unspecified action that caused plaintiff to be called back to the sally port the next day. Id. at 2, 7, 15 ¶¶ 4-5, 44, 52, 108. Plaintiff was held in the sally port for approximately seven hours in the freezing rain while once again handcuffed too tightly. Id. at 7-8, ¶¶ 53-55. During that time, defendant Lord refused to let him use the restroom or to give him food or water. Id. at 8, ¶ 57. As a result of the conditions and the recent death of his brother, plaintiff began to feel suicidal and was taken to a crisis bed. Id., ¶¶ 58-59. On January 3, 2017, while in the crisis bed, plaintiff called "man down" for help with his back spasms for forty-five minutes without assistance and was told by defendants Robenson and Jane Doe that there was no man down in a medical facility. Id., ¶¶ 61-62. He asserts that Robenson and Jane Doe conspired to deny him medical care. Id. at 15, ¶ 110. On January 6, 2017, after six hours of laying on the ground and hitting the door asking for assistance, defendant Jane Doe put him in a gurney and he was given a Haldol shot by an unknown nurse. Id. at 8-9, ¶¶ 62, 64-66.

On January 8, 2017, plaintiff had a hearing on his alleged attempted assault on defendant Kendall before defendant John Doe 3, who refused to call any of plaintiff's witnesses. Id. at 12,
////

5

¶¶ 90-94. Plaintiff was found guilty and lost 190 days of credit. Id., ¶ 95. He appealed the disciplinary violation and his appeal was denied by defendant John Doe 4. Id. at 13, ¶¶ 97-98.

After plaintiff was returned to the yard, defendants Kendall, Abrahms, and Mcguire retaliated against him. Id. at 9, ¶ 70. Abrahms, who is friends with Kendall, denied plaintiff his day room access, showers, and the ability to go to his treatment group. Id. at 10, ¶ 71. Kendall inappropriately confiscated his property for a disciplinary issue and threw plaintiff's food in the garbage. Id., ¶¶ 72-73. Then, on June 24, 2017, Kendall escorted him to a disciplinary hearing where defendant Mcguire acted as the hearing officer and issued an excessive punishment after finding him guilty. Id. at 10-11, ¶¶ 77-82. Mcguire then asked where the other charge was, and when Kendall said that it happened on a different shift she got angry that she could not hear the other charge. Id. at 11, ¶¶ 83-85.

Finally, plaintiff alleges that Baughman, as warden, failed "to take disciplinary or other actions to curb the known pattern of physical abuse of inmates by defendant R. Kendall," which led to the violation of his First and Eighth Amendment rights. Id. at 14, ¶ 107.

III. Excessive Force and Failure to Protect

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1970) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

////

Furthermore, "[i]n its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer, 511 U.S. at 832 (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

Plaintiff's allegations that Kendall used excessive force against him while he was on the phone with his foster mother are sufficient to state claims for relief and will require a response. Similarly, plaintiff's allegations that defendant Lord denied him access to a bathroom, water, and food are sufficient to state claims for relief and will require a response. The claims that Lord and Nicolson ignored plaintiff's complaints that his handcuffs were too tight and cutting off his circulation will also require a response. However, plaintiff's claim that defendant Ross refused to report illegal activity fails to state a claim. Plaintiff fails to identify what activity Ross did not report, and though it appears that he may be referring to the overtightening of his handcuffs, there are no facts to indicate whether Ross failed to report the overtightened handcuffs while plaintiff was still in them or whether the failure occurred after the fact. Without this information, plaintiff has failed to sufficiently allege a failure to protect by Ross.

IV. Deliberate Indifference to Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057

7

(9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Though plaintiff alleges that he was denied medical care, he largely fails to assert that any particular individual denied him care and simply makes a conclusory assertion that medical staff conspired with defendants to deny him care. ECF No. 30 at 13-14, ¶¶ 99-104. These vague allegations are insufficient to state claims for relief. However, plaintiff does specify that defendants Jane Doe and Robenson denied him medical care when he spent forty-five minutes calling "man down" for his back spasms and they told him that there was no "man down" in a medical facility. Id. at 30 at 8, 15 ¶¶ 61-62, 110. These allegations are sufficient to state a claim for relief since the court can infer that Jane Doe and Robenson ignored plaintiff's requests for help. However, the conclusory assertion that Jane Doe and Robenson conspired to deny plaintiff medical care are insufficient to state a claim for conspiracy. Additionally, the claim that they conspired to give plaintiff a Haldol shot instead of pain medication also fails because plaintiff does not allege that either defendant gave him the shot and there are no facts to show any agreement between Jane Doe, Robenson, and the unknown nurse that gave plaintiff the shot.

V.     Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). However, an inmate subject to disciplinary sanctions that include the loss of good-time credits must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action," id. at 564-65 (internal quotation marks and citation omitted); (3) an opportunity to call witnesses and present

8

documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff has sufficiently alleged that Doe 3 denied him due process when he refused to call any of plaintiff's witnesses. Furthermore, since Doe 4 could have corrected the due process violation in reviewing plaintiff's appeal, plaintiff has also stated a claim for relief against Doe 4. See Zacharie v. Chirila, 362 F. App'x 586, 587 (9th Cir. 2010) (citing Zinermom v. Burch, 494 U.S. 113, 126 (1990) (holding that a constitutional violation is not complete "unless and until the State fails to provide due process" within the established administrative or statutory scheme)).

VI. Retaliation

A viable First Amendment claim for retaliation must establish the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff "need not establish an independent constitutional interest" was violated); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns.").

Plaintiff alleges that Doe defendants 1 and 2 were responsible for the lock up orders needed to put inmates in segregation and that it was because of them that he was sent back to the sally port the day after he was assaulted by Kendall. ECF No. 30 at 2, 15, ¶¶ 4-5, 108. Though he claims this was an act of retaliation, he fails to identify the protected act that prompted the retaliation. Similarly, plaintiff alleges that defendants Kendall, Abrahms, and McGuire retaliated against him after he was returned to the yard, but he fails to identify the protected conduct that

prompted the retaliation. Id. at 9-11, ¶¶ 70-73, 81-83. Accordingly, plaintiff's claims for retaliation fail.

VII. Personal Involvement

There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371, 376 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Although plaintiff names Voong and Fuji as defendants, he does not make any claims against them and therefore fails to state any claims against them.

VIII. Supervisory Liability

"There is no respondeat superior liability under section 1983." Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Finally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff makes only vague and conclusory assertions that Baughman, as warden, failed to stop a pattern of physical abuse at the prison. There are no facts establishing that such a pattern existed, that Baughman was aware of it, and that he failed to intervene. It appears that Baughman has been named as a defendant solely based upon his position as warden, which is not sufficient

////

to subject him to liability for the actions of his subordinates. Accordingly, plaintiff has failed to state a claim for relief against Baughman.

IX. Civil Rights of Institutionalized Persons Act

To the extent plaintiff is attempting to bring his action under the Civil Rights of Institutionalized Persons Act, his claims fail. The Act "authorize[s] the United States Attorney General to institute civil actions against certain institutions for violating the civil rights of persons confined or residing therein" and "precludes a private cause of action" under the Act. McRorie v. Shimoda, 795 F.2d 780, 782 n.3 (9th Cir. 1986) (citing 42 U.S.C. § 1997j).

X. State Law Claims

Under California law, the timely presentation of a claim under the Government Claims Act is a condition precedent to maintaining an action against the state and therefore is an element of the cause of action that must be pled in the complaint. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004).

A plaintiff seeking to bring a lawsuit for money or damages against the state[2] for injury must first submit a claim to the California Victim Compensation and Government Claims Board ("Claims Board") within six months after accrual of the cause of action. Cal. Gov't Code §§ 905.2; 911.2. Claims "relating to any other cause of action" must be brought within one year of accrual of the cause of action. Cal. Gov't Code § 911.2(a). A claim against a public employee[3] or former public employee is not required to be presented prior to filing an action against the employee if the alleged injury resulted from an act or omission in the scope of the defendant's employment as a public employee. Cal. Gov't Code § 950. However, a cause of action against the employee cannot be maintained if an action for the injury would be barred against the employing public entity for failure to comply with the notice of claim requirements.

////

---

[2] "State" is defined as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

[3] A "public employee" is an employee of a "public entity," which includes the State. Cal. Gov't Code §§ 811.2, 811.4.

11

Cal. Gov't Code § 950.2.  In other words, a plaintiff must submit a timely notice of claim to the Claims Board before he can bring suit against a state employee.

Plaintiff alleges that defendants violated the Unruh Civil Rights Act and committed various state torts, but he has not alleged compliance with the Government Claims Act. Accordingly, plaintiff has failed to sufficiently allege any state law claims.

XI.     Doe Defendants

Although the use of fictitiously named Doe defendants is generally not favored, Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), amendment is allowed to substitute true names for fictitiously named defendants, Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989).  Because it appears that plaintiff may be able to use discovery to identify the Doe defendants against whom he has stated cognizable claims, the court will allow the claims to proceed.  However, due to the impossibility of serving an unknown individual, the court will not order service on the Doe defendants until plaintiff has identified them and filed a motion to substitute a named defendant for the Doe defendants.  Plaintiff should seek to discover the identity of Doe defendants and move to substitute them into the case as soon as is possible. Failure to identify a Doe defendant and serve him or her prior to the close of discovery will result in a recommendation that the claims against that defendant be dismissed.

XII.    Leave to Amend

For the reasons set forth above, the court finds that the second amended complaint does not state any cognizable claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, or Does 1 and 2, and that his claims against Roberson and Jane Doe for conspiracy and giving him Haldol also fail.  Plaintiff has also failed to sufficiently allege claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law.  However, it appears that plaintiff may be able to allege facts to remedy this and he will be given a final opportunity to amend the complaint if he desires.

Plaintiff may proceed forthwith to serve defendants Kendall, Lord, Robenson, and Nicolson on his claims that Kendall used excessive force; that Lord failed to loosen his handcuffs and left him in the sally port for hours without water, food, or access to a bathroom; that Nicolson

failed to do anything when plaintiff's handcuffs were too tight; and that Robenson was deliberately indifferent when he ignored plaintiff's calls for help. Defendants Jane Doe and Does 3 and 4 may be served once they have been identified. Alternatively, plaintiff may delay serving any defendant and amend the complaint to attempt to fix the problems identified above.

Plaintiff will be required to complete and return the attached notice advising the court how he wishes to proceed. If plaintiff chooses to amend the complaint, he will be given thirty days to file an amended complaint. If plaintiff elects to proceed on his claims against defendants Kendall, Lord, Robenson, Nicolson, Jane Doe, and Does 3 and 4 without amending the complaint, the court will proceed to serve the complaint. A decision to go forward without amending the complaint will be considered a voluntarily dismissal without prejudice of the claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2, and his claims against Roberson and Jane Doe for conspiracy and giving him Haldol. He will also be dismissing without prejudice claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law.

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th

Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal). Once plaintiff files an amended complaint, any previous complaints no longer serve any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

XIII. Plain Language Summary of this Order for a Pro Se Litigant

Some of the allegations in the complaint state claims against the defendants and some do not. Defendant Kendall will be required to respond to your excessive force claim. Defendants Lord and Nicolson will be required to respond to your claim that they failed to do anything about your handcuffs being too tight and Lord will also have to respond to the claim that he left you in the sally port without water, food, or access to a bathroom. Defendant Robenson will be required to respond to the claim that he ignored your calls for help with your back spasms. Once they have been identified, defendant Jane Doe will be required to respond to the claim that she ignored your calls for help and Does 3 and 4 will have to respond to your claim that they denied you due process in a disciplinary hearing.

Your claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2, and your claims against Roberson and Jane Doe for conspiracy and giving you Haldol do not state claims for relief. You also have not alleged enough facts to state a claim against any defendant for retaliation or for the violation of state law. The state law claims fail because you have not alleged that you filed a timely notice of claim with the Victims' Compensation Board. You cannot state a claim for relief under the Civil Rights of Institutionalized Persons Act because the Act does not allow it.

You have a choice to make. You may either (1) proceed immediately on your claims against defendants Kendall, Lord, Robenson, Nicolson, Jane Doe, and Does 3 and 4 as outlined above, and voluntarily dismiss the other claims and defendants without prejudice; or (2) try to amend the complaint. If you want to go forward without amending the complaint, you will be voluntarily dismissing without prejudice the claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2, and your claims against Roberson and Jane Doe for

conspiracy and giving you Haldol. You will also be dismissing without prejudice claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law. If you choose to amend your complaint, the amended complaint must include all of the claims you want to make, including the ones that have already been found to state a claim, because the court will not look at the claims or information in your previous complaints. **Any claims or information not in the amended complaint will not be considered.** You must complete the attached notification showing what you want to do and return it to the court. Once the court receives the notice, it will issue an order telling you what you need to do next (i.e., file an amended complaint or wait for the complaint to be served).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for change of venue and for a court order (ECF No. 29) is denied.

2. All of plaintiff's claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2; his claims against Roberson and Jane Doe for conspiracy and giving him Haldol; and his claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law do not state claims for which relief can be granted.

3. Plaintiff has the option to proceed immediately on his claims that Kendall used excessive force; Lord failed to loosen his handcuffs and left him in the sally port for hours without water, food, or access to a bathroom; Nicolson failed to do anything when plaintiff's handcuffs were too tight; Robenson and Jane Doe were deliberately indifferent when they ignored plaintiff's calls for help; and Does 3 and 4 denied him due process in relation to a disciplinary hearing. Alternatively, plaintiff may amend the complaint.

4. Within fourteen days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file a third amended complaint. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of all claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2; the claims against Roberson and Jane Doe for

conspiracy and giving plaintiff Haldol; and the claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law.

DATED: July 8, 2019.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS,<br><br>        Plaintiff,<br><br>   v.<br><br>R. KENDALL, et al.,<br><br>        Defendants. | No. 2:17-cv-2709 AC P<br><br><u>PLAINTIFF'S NOTICE ON HOW TO PROCEED</u> |

Check one:

\_\_\_\_\_ Without amending the complaint, plaintiff wants to proceed immediately on his claims that Kendall used excessive force; Lord failed to loosen his handcuffs and left him in the sally port for hours without water, food, or access to a bathroom; Nicolson failed to do anything when plaintiff's handcuffs were too tight; Robenson and Jane Doe were deliberately indifferent when they ignored plaintiff's calls for help; and Does 3 and 4 denied him due process in relation to a disciplinary hearing. Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing without prejudice all of his claims against defendants Baughman, Ross, Voong, Abrahms, Mcguire, Fuji, and Does 1 and 2; his claims against Roberson and Jane Doe for conspiracy and giving him Haldol; and his claims against any defendant for retaliation or for the violation of the Civil Rights of Institutionalized Persons Act and state law.

\_\_\_\_\_ Plaintiff wants to amend the complaint.

DATED:_____

                                                    Andre Wells
                                                    Plaintiff pro se